UNITED STATES of America

v.

Ira BLAND, Appellant.

No. 09–1755.

United States Court of Appeals, Third Circuit.

Submitted Pursuant to Third Circuit LAR 34.1(a) Dec. 18, 2009.

Filed: Jan. 14, 2010.

Seth M. Beausang, Esq., Shawn E. Martyniak, Esq., John C. Snyder, Esq., Office of United States Attorney, Wilmington, DE, for United States of America.

Christopher S. Koyste, Esq., Bellefonte, DE, for Appellant.

BEFORE: SLOVITER, JORDAN, and GREENBERG, Circuit Judges.

## OPINION OF THE COURT

GREENBERG, Circuit Judge.

This matter comes on before this Court on an appeal from a final judgment of conviction and sentence entered in this criminal case on March 5, 2009. A grand jury indicted appellant Ira Bland for being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). Bland filed a motion to suppress evidence, i.e., the firearm, which police officers seized without a warrant. At the evidentiary hearing on the motion the prosecution sought to justify the seizure on the authority of *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). The District Court agreed with the prosecution and thus denied the motion in an order and an accompanying comprehensive memorandum opinion dated September 30, 2008.

After the District Court denied the motion Bland pleaded guilty pursuant to Fed. R.Crim.P. 11(a)(2), preserving his right to appeal from the denial of the motion. The District Court sentenced Bland to 48 months imprisonment to be followed by a three-year term of supervised release. Bland then appealed. The District Court had jurisdiction under 18 U.S.C. § 3231 and we have jurisdiction under 28 U.S.C. § 1291. The parties agree that we exercise plenary review and inasmuch as the facts in the case are not disputed we, in turn, agree with them. *See United States v. Perez,* 280 F.3d 318, 336 (3d Cir.2002).

The circumstances of the seizure of the firearm for the most part followed a rather routine pattern but in one respect were unusual. The routine circumstances were that patrol officers received a call from a Wilmington, Delaware, police dispatcher to go to a particular location at which a suspect that the dispatcher described was present. The dispatcher told the officers that a homicide suspect was sitting in a car that the dispatcher described at that location. The dispatcher also advised the officers that Kevin Coverdale was the complainant in the homicide case. When the officers arrived at the designated location of the car they saw a parked vehicle which fit the description that the dispatcher had

given them with Bland as its sole occupant. Bland was wearing clothes that fit the description that the dispatcher gave of the homicide suspect.

Coverdale, who was at the scene where he was visible in a wide-open area, pointed out Bland and told the police "that's the guy that shot my son" and "that's him, that's him." Coverdale's identification was unusual for, as one of the officers explained, Bland could see Coverdale and he, the officer, never before had seen a complainant turn in a suspect out in the open. Thus, Bland knew that Coverdale had implicated him in the shooting to the police.

At the time that the officers approached Bland's vehicle they asked him to alight from it and he did so. The officers then asked Bland to turn around and put his hands on the roof of the car and he did that as well. Then one of the officers asked Bland if he had anything that could hurt the officer and Bland said that he had a gun. The officers seized the gun and arrested Bland.

The District Court after reviewing the applicable law denied the motion to suppress as it held that:

> Based on the evidence and testimony adduced at the hearing, the Court concludes that the Government has established that reasonable suspicion supported the investigative *Terry* stop and frisk of Mr. Bland. Patrolman DeBonaventura was instructed to respond to a location known as a high crime area, to investigate an individual alleged to have been involved in a homicide. The location of the suspect and the description of him were provided to police by a caller to 911 who identified himself by name and identified the victim as his son, and the date of his son's death as December 31. In addition, the caller, Kevin Coverdale, remained at the location of the suspect until the officers arrived.

App. at 19.

Bland dissects his argument addressing *Terry* into three parts:

1. Whether, under the totality of the circumstances, the in-person tip provided to the police in this case created reasonable suspicion to support a *Terry* stop of [him].

2. Whether [he] was searched, prior to being touched, solely because the officers asked him to exit his vehicle, turn around, and place his hands on the car.

3. Assuming the Court decides that the officers searched [him] before actually touching him, whether the officers had reasonable suspicion that [he] was armed to support a *Terry* frisk.

Appellant's br. at 2.

We will affirm. It was entirely appropriate for the officers to go to the location of the vehicle when they received the dispatcher's call. Then, when they arrived at the scene, Coverdale identified Bland to them as the person who had shot his son. At that point it was more than appropriate for the officers to determine if Bland was armed and to investigate the situation further. In the light of the circumstance that Coverdale identified Bland as a killer they would have been foolish if they had not ascertained if Bland was armed. No matter how Bland slices up his argument that the circumstances did not justify his search under *Terry*, we are in full accord with the District Court's reasoning, based on its unchallengeable findings of fact, that the search was constitutionally permissible.

The judgment of conviction and sentence entered March 5, 2009, will be affirmed.